UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

HOLLY JOLENE BOWRON,

       Plaintiff,

       v.

CAROLYN W. COLVIN,
Commissioner of Social Security,

       Defendant.

No.  2:13-CV-03061-JTR

ORDER GRANTING PLAINTIFF'S
MOTION  FOR SUMMARY
JUDGMENT

**BEFORE THE COURT** are cross-motions for summary judgment.  ECF
No. 20, 21.  Attorney D. James Tree represents Plaintiff; Special Assistant United
States Attorney Benjamin J. Groebner represents the Commissioner of Social
Security (Defendant).  The parties have consented to proceed before a magistrate
judge.  ECF No. 7.  After reviewing the administrative record and the briefs filed
by the parties, the Court **GRANTS** Plaintiff's Motion for Summary Judgment and
**DENIES** Defendant's Motion for Summary Judgment.

## JURISDICTION

On May 6, 2009, Plaintiff filed a Title II application for a period of disability
and disability insurance benefits, alleging disability beginning January 1, 2007.  Tr.
21.  Plaintiff reported she could not work due to "ADHD, Bi-Polar, Anxiety,
Mental Disability."  Tr. 129.  Plaintiff's claim was denied initially and on
reconsideration, and she requested a hearing before an administrative law judge

ORDER GRANTING PLAINTIFF'S MOTION . . . - 1

(ALJ).  Tr. 73-108.  A hearing was held on September 6, 2011, at which medical expert Larry Kravitz, Ph.D., vocational expert Diane K. Kramer, and Plaintiff, who was represented by counsel, testified.  Tr. 439-479.  ALJ Caroline Siderius presided.  Tr. 439.  The ALJ denied benefits on October 6, 2011.  Tr. 21-29.  The instant matter is before the Court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties and thus, they are only briefly summarized here.  At the time of the hearing, Plaintiff was 41 years old, living with her three children, ages 14, 11 and 8.  Tr. 454, 456.  Plaintiff left high school after the eleventh grade.  Tr. 230.

Plaintiff last worked as a waitress, and she said she was fired because she was often late and because she did not get along well with her supervisor.  Tr. 454. She has also worked as a cashier at a convenience store.  Tr. 230.

Plaintiff testified she has hypoglycemia, back pain, and nerve damage in her back, but that the "main reason" she cannot work is that she becomes "overwhelmed."  Tr. 459.  She said that her three children are special needs:  all three have ADHD, one has a mood disorder, and another has Asperger's.  Tr. 459. Plaintiff's mother helps her care for the children.  Tr. 463-464.

Plaintiff plans and prepares meals, performs housework and walks the dogs. Tr. 230.  She does not have a driver's license.  Tr. 230-231.

Plaintiff testified she takes medication to help with her symptoms, and, in the past, she has responded well to medication.  Tr. 231, 461.  She estimated that three to four times per month she experiences a low day, and she stays in bed all day.  Tr. 465.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035,

1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence exists to support the administrative findings, or if conflicting evidence exists that will support a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot do his past relevant work, the

ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(i-v), 416.920(a)(4)(i-v).

## ALJ'S FINDINGS

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since May 6, 2009, the alleged onset date. Tr. 23. At step two, the ALJ found Plaintiff suffered from the severe impairments of attention deficit hyperactivity disorder, bipolar disorder and depression. Tr. 23. At step three, the ALJ found Plaintiff's impairments, alone and in combination, did not meet or medically equal one of the listed impairments. Tr. 24. The ALJ determined that Plaintiff had the residual functional capacity (RFC) to perform a full range of work at all exertional levels but with the following nonexertional limitations, restricting Plaintiff to "simple 1-3 step tasks but no detailed work." Tr. 25. Also, Plaintiff was limited to "no more than occasional changes in work setting" and "routine superficial contact with the public and no more than occasional contact with coworkers." Tr. 25.

The ALJ found that Plaintiff is unable to perform past relevant work. Tr. 27. Considering Plaintiff's age, education, work experience and residual functional capacity, jobs exist in significant numbers in the national economy that Plaintiff can perform, such as cleaner and laundry worker. Tr. 27-28. As a result, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. Tr. 28.

## ISSUES

Plaintiff contends that the ALJ erred in determining credibility, weighing the medical opinion evidence, and in the Step Five determination. ECF No. 20 at 8.
///

ORDER GRANTING PLAINTIFF'S MOTION . . . - 4

**DISCUSSION**

**A.    Credibility**

Plaintiff contends the ALJ erred by finding Plaintiff had little credibility. ECF No. 20 at 15-18.

The ALJ is responsible for determining credibility. *Andrews*, 53 F.3d at 1039.  Unless affirmative evidence exists indicating that the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1996).  The ALJ's findings must be supported by specific, cogent reasons. *Rashad v. Sullivan,* 903 F.2d 1229, 1231 (9th Cir. 1990).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998), *quoting Lester*, 81 F.3d at 834.  If objective medical evidence exists of an underlying impairment, the ALJ may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. *See Bunnell v. Sullivan*, 947 F.2d 341, 347-348 (9th Cir. 1991).

To determine whether the claimant's testimony regarding the severity of the symptoms is credible, the ALJ may consider, for example: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. *See, e.g., Fair v. Bowen*, 885 F.2d 597, 602-604 (9th Cir. 1989); *Bunnell*, 947 F.2d at 346-347.

The ALJ found Plaintiff's allegations about the severity of her symptoms were not credible.  Tr. 25.  The ALJ noted that while Plaintiff reported severe physical impairments related to her back, knee and more recently, bursitis, no evidence suggests that these are severe impairments.  Tr. 26.  Also, the ALJ found

no evidence established that Plaintiff's neck and shoulder impairments, and her symptoms related to bursitis, were expected to last for more than a 12 month period. Tr. 26. Additionally, the ALJ found that while Plaintiff had "some" mental limitations, the allegations of debilitating symptoms are not fully credible in light of the treatment record. Tr. 26. The ALJ also noted that examining physician Jay M. Toews, Ed.D., diagnosed probable malingering. Tr. 26.

Plaintiff argues the ALJ erred by finding Plaintiff had little credibility based on a lack of evidence indicating her symptoms would last more than 12 months, and by finding her claimed mental health limitations were inconsistent with the treatment record. ECF No. 20 at 15.

### 1.      Symptom Severity and Duration

First, Plaintiff argues that three records establish Plaintiff's physical impairments are degenerative in nature, and thus will last more than twelve months. ECF No. 20 at 16.

In order to be considered disabled, a disability must have lasted or be expected to last for a continuous period of not less than 12 months. 20 C.F.R. § 416.905(a). An impairment is "not severe" if it does not "significantly limit" the ability to conduct basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). "An impairment or combination of impairments is not severe when the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (quoting SSR 85-28) (*citing Yuckert v. Bowen,* 841 F.2d 303, 306 (9th Cir. 1988)).

The first record Plaintiff cites is the first page of a two-page radiologist report dated June 26, 2011. The report indicated that Plaintiff had "mild to moderate diffuse kyphotic angulation of the mid and upper cervical spine. Presumed position/spasm" and "minimal degenerative changes of the lower [.]" Tr. 437. The sentence is not finished on the first page, and Plaintiff failed to

provide the second page.  However, it is apparent that this record, as provided, does not support Plaintiff's position that she has a severe back impairment.  The findings reveal mild to moderate abnormalities, and minimal degenerative changes.  As such, the evidence supports the ALJ's interpretation that this impairment is not severe.

The second record Plaintiff cites is a medical imaging report dated June 30, 2011, relating to Plaintiff's bursitis.  Tr. 295.  The record provides one page of a two-page report, that reveals Plaintiff had "mild degenerative changes of C5-6 with mild central canal stenosis and cord impingement and mild left foraminal stenosis," and "C6-7 right-sided disc bulging with annular tear, which mildly narrows the central canal and effaces the . . . ."  Tr. 295.  Again, the sentence is not finished on the first page, and the record does not contain page two.  While Plaintiff accurately characterizes the condition as degenerative, it is apparent from the record that the impairment is not severe, and the changes are characterized as "mild."  Tr. 295.  Thus, the ALJ's conclusion that bursitis was not a severe impairment is supported by the record.

The third record Plaintiff cites is a chart note from an August 12, 2011, office visit with George F. Gade, M.D.  Tr. 420-422.  Plaintiff was examined for neck and right arm pain, tingling and numbness, and headache.  Tr. 420.  Dr. Gade's exam revealed:

> external rotators of the shoulder were 4+/5 bilaterally; pronator to the forearm was 4-/5 on the right side versus 4+/5 on the left; biceps versus 5/5 on the left; triceps 4/5 on the left versus 5/5 on the right; finger flexors 5/5 bilaterally; intrinsics 4-/5 bilaterally; all groups 5/5 and symmetric in the lower extremities.

Tr. 421.  Dr. Gade assessed Plaintiff with possible cervical disc herniation without myelopathy, and with cervical radiculopathy.  Tr. 421.  Dr. Gade ordered cervical spine x-rays and a CT scan.  Tr. 421.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 7

Plaintiff fails to explain how Dr. Gade's examination results reveal a severe impairment, and as the ALJ noted, no evidence exists that these symptoms are expected to last more than twelve months.  Moreover, assuming *arguendo* that Plaintiff's impairments are degenerative, establishing that fact fails to establish that the condition, at the time of the alleged onset date, constituted a severe impairment.  The ALJ's conclusion that Plaintiff did not have a severe impairment that would last for more than twelve months is a reasonable interpretation of the record.

### 2.    Treatment Record

Plaintiff also argues the ALJ erred by finding Plaintiff's credibility was diminished because her claims about her mental health limitations were inconsistent with the treatment record.  ECF No. 20 at 15.

In determining credibility, the ALJ may consider inconsistencies in the claimant's testimony and inconsistencies between the testimony and the claimant's conduct, her inadequately explained failure to seek treatment, and whether the claimant's daily activities are inconsistent with the alleged symptoms.  *See Tommasetti*, 533 F.3d at 1039; *Lingenfelter,* 504 F.3d at 1040.

In support of her argument, Plaintiff cites symptoms that she contends support her claims.  ECF No. 20 at 17-18.  The ALJ's analysis is supported by the record that indicates Plaintiff's complaints often were related to situational stressors, such as acting as the primary caregiver to three special needs children.  Tr. 26, 194, 202, 213, 216, 225, 305.

Also, as the ALJ noted, Plaintiff's objective test scores revealed her memory and cognition were intact.  Tr. 26, 194, 202, 232, 255.  The record also supports the ALJ's reliance upon several mental status exams that indicated Plaintiff's affect was pleasant, appropriate, and her mood was stable.  Tr. 26, 202, 224, 231, 261.  Moreover, the record reveals in March, 2010, Jay M. Toews, Ph.D., interpreted Plaintiff's test results to indicate "significant tendency to exaggerate symptoms,"

ORDER GRANTING PLAINTIFF'S MOTION . . . - 8

and he diagnosed, in part, "malingering, probable." Tr. 232. Finally, the record
supports the ALJ's finding that two of Plaintiff's treating providers opined that it
would be therapeutic for Plaintiff to work. Tr. 26, 308.[1] In sum, in finding
Plaintiff had little credibility, the ALJ provided specific, clear and convincing
reasons, supported by substantial evidence. The ALJ did not err.

**B.    Medical Opinions**

In weighing medical source opinions in Social Security cases, the Ninth
Circuit distinguishes among three types of physicians: (1) treating physicians, who
actually treat the claimant; (2) examining physicians, who examine but do not treat
the claimant; and (3) non-examining physicians, who neither treat nor examine the
claimant. *Lester*, 81 F.3d at 830. Generally, more weight should be given to the
opinion of a treating physician than to the opinions of non-treating physicians. *Id.*

Although a treating physician's opinion is generally afforded the greatest
weight in disability cases, it is not binding on an ALJ with respect to the existence
of an impairment or the ultimate determination of disability. *Tonapetyan v. Halter*,
242 F.3d 1144, 1148 (9th Cir. 2001). When a conflict exists between the opinions
of a treating physician and an examining physician, the ALJ may disregard the
opinion of the treating physician only if he sets forth "specific and legitimate
reasons supported by substantial evidence in the record for doing so." *Lester*, 81
F.3d at 830. While the contrary opinion of a non-examining medical expert does
not alone constitute a specific, legitimate reason for rejecting a treating or
examining physician's opinion, a non-examining physician's opinion may
constitute substantial evidence when consistent with other independent evidence in
the record. *Magallanes v. Bowen*, 881 F.2d 747, 752 (9th Cir. 1989).

---

[1]On April 26, 2011, Peggy Champoux, M.S.W., noted in Plaintiff's chart: "Lisa
Vickers ARNP and I agree that Holly can work. Holly working would be
therapeutic." Tr. 308.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 9

**1.    Larry Kravitz, Ph.D.**

Plaintiff contends that the ALJ erred by failing to adopt all the assessments opined by testifying, non-examining clinical psychologist Larry Kravitz, Ph.D. ECF No. 20 at 14-15.

At the hearing, Dr. Kravitz testified that in his opinion, Plaintiff's impairments did not meet or equal a listing. Tr. 450. He concluded that Plaintiff had mild restrictions in daily living, and mild to moderate limitations in social function, as well as in concentration, persistence and pace. Tr. 450-451. Citing Plaintiff's daily activities, Dr. Kravitz opined that Plaintiff would be "able to manage most aspects of the daily routine" in job-related responsibilities. Tr. 451. Dr. Kravitz explained Plaintiff had limitations related to contact with co-workers and supervisors:

> In terms of interpersonal relations in the workplace, I think claimant does have an issue with tending to overreact to critiquing, that she can be rude, blunt, aggressive – particularly when stressed. So I would limit her to brief and superficial interactions with the public, and I would put her in a work environment where she only has limited interactions with coworkers. I would not put her in a work environment where she needed – which required involved or complex interpersonal contact. I think from the supervisory point-of-view, it would be best if supervision was occasional and primarily task-instructive. And I think claimant with those parameters would be capable of handling ordinary levels of work stress with limited changes in the work routine. I would not put her in a work environment with high levels of stress or unpredictable levels of stress. Those would be my limitations, judge.

Tr. 451-452. In response to a question from Plaintiff's counsel, Dr. Kravitz elaborated regarding the frequency of supervision that Plaintiff would be able to tolerate:

> Primarily I would have the supervisory contact task-instructive. Pretty much, here's what she needs to do, here's how to do the task, if

ORDER GRANTING PLAINTIFF'S MOTION . . . - 10

you have any questions how to go about it let me know, I'll come back and check with you to see how you are doing. But certainly not something where a supervisor is watching her closely, where a supervisor is correcting her frequently or modifying her performance. I think that would tend to become overwhelming, and then she might tend to overreact to that sort of frequent critiquing.

Tr. 452-453.

The ALJ determined that Dr. Kravitz's testimony was "consistent with the treatment record and is accepted as credible." Tr. 26. Plaintiff's RFC did not include limits related to supervisor contact. Tr. 25.

K. Diane Kramer, vocational expert, testified at the hearing that, for a hypothetical worker who could perform with the limitations mirroring Plaintiff's RFC, the hypothetical worker could work as a cleaner or laundry worker. Tr. 473-474.

Plaintiff's counsel questioned Ms. Kramer about the limitations specifically related to the supervisor:

Q.    Now as far as the limitations to the supervision only being occasional, where the supervisor would not, you know, watch closely or modify, make suggestions to modify work performance, are there any jobs where a supervisor wouldn't do that or wouldn't be within the [purview] of the supervisor to do that?

A.    So it's just occasional interaction with the supervisor?

Q.    Well, only occasional interaction with the supervisor. And then also only direct supervision where the, you know, "Here's your duties," that's it; nothing where they'd watch the person or make suggestions to modify work performance. Is it due to an individual getting stressed out, perceived, you know, high internal stress and overreacts to situations. And I guess my question is would that flows [phonetic] [sic] with competitive work environment or not?

///

ORDER GRANTING PLAINTIFF'S MOTION . . . - 11

A.      I don't think so because I think even when you don't have a
constant or even occasional supervision – the supervisor will always
make suggestions and maybe even corrections.  But, you know, I
think you're – if I'm understanding your correctly, you're trying to get
me to identify a position where there would be none of that.

Q.      Well, I just say – yeah, if, I'm just saying if that would work
with competitive in [sic] work force or if that would be something
more of a sheltered work environment or something like that.  Or –

A.      Yeah.  And even in a sheltered work environment, they, you've
got somebody there, you have a supervisor there.  Way more in a
sheltered workshop environment than you would in a normal work
setting.  So I guess my answer would be that she would not, or this
individual would not be able to participate in competitive work.

Tr. 476-477.

Plaintiff argues that while the ALJ indicated that Dr. Kravitz's opinion was
entitled to great weight, the ALJ failed to include the supervisory limitations
assessed by Dr. Kravitz in Plaintiff's RFC, and when included, those limitations
preclude employment.  ECF No. 20 at 14-15.

In this case, the wording of counsel's hypothetical to Ms. Kramer did not
closely track the language Dr. Kravitz used to describe Plaintiff's limitations
related to supervision.  Tr. 451-452, 476.  Dr. Kravitz opined that Plaintiff would
not do well with a supervisor "watching her closely" and "correcting her frequently
or modifying her performance."  Tr. 452.  By contrast, Plaintiff's counsel omitted
the critical term "frequently" from his hypothetical and essentially described a
supervisor who was completely precluded from managing the employee:

where the supervisor would not . . . watch closely or . . . make
suggestions to modify work performance . . . nothing where they'd
watch the person and make suggestions to modify work performance.

Tr. 476-477.  In essence, counsel's hypothetical would limit Plaintiff to
work that was wholly unsupervised.  But Dr. Kravitz's testimony described a

ORDER GRANTING PLAINTIFF'S MOTION . . . - 12

more narrow circumstance – Plaintiff cannot work in positions where the
supervision is close, frequent or constant.  As such, counsel's hypothetical to
Ms. Kramer's was not applicable to Plaintiff.

Defendant argues that Dr. Kravitz merely described Plaintiff's best working
conditions, and his discussion about supervision was a recommendation, not an
imperative.  ECF No. 21 at 9.  An ALJ may omit a medical source's
recommendation, as opposed to an imperative, from an RFC.  *Carmickle v.
Comm'r, SSA,* 533 F.3d 1155, 1165 (9th Cir. 2008).  However, in this case the
Court is unable to find that Dr. Kravitz's opinion related to Plaintiff's need for a
job with infrequent or occasional supervision was simply a recommendation.
While Dr. Kravitz introduced the limitations about occasional contact with a
supervisor with the words "it would be best," he later explained: "But *certainly not*
something where a supervisor is watching her closely, where a supervisor is
correcting her frequently or modifying her performance."  Tr. 452-453 (emphasis
added).  In this context, the words "certainly not" cannot reasonably be construed
as a mere recommendation, and thus Defendant's assertion fails.

Further, an ALJ's findings need only be consistent with a doctor's assessed
limitations, not identical to the limitations.  *Turner v. Comm'r of Soc. Sec.,* 613
F.3d 1271, 1223 (9th Cir. 2010).  But in this case, the limitation relating to
occasional supervision was entirely omitted.  As a result, the RFC fails to reflect a
significant portion of Dr. Kravitz's opinion.  In this case, Ms. Kramer did not
address a hypothetical that contained all of Dr. Kravitz's functional limitations,
specifically including the limitation that the position must be limited to occasional
contact with a supervisor.

In sum, the ALJ adopted Dr. Kravitz's assessments, but did not provide a
reason for rejecting the limitation relating to the frequency of contact with
supervisors.  While an ALJ need not discuss all evidence presented, the ALJ must
explain why significant probative evidence has been rejected.  *Vincent v. Heckler*,

ORDER GRANTING PLAINTIFF'S MOTION . . . - 13

739 F.2d 1393, 1394-1395 (9th Cir. 1984).  In the absence of an explanation for rejecting the supervisory limitation, the case must be remanded to reconsider Dr. Kravitz's testimony and if necessary, provide reasons for rejecting this limitation, or in the alternative, modify Plaintiff's RFC to reflect the limitations relating to supervision.

### 2.   Peggy Champoux, M.S.W.

Plaintiff contends the ALJ erred by rejecting an opinion from Peggy Champoux, MSW.  ECF No. 20 at 10-14.

In evaluating the weight to be given to the opinion of medical providers, Social Security regulations distinguish between "acceptable medical sources" and "other sources."  Acceptable medical sources include, for example, licensed physicians and psychologists, while other non-specified medical providers are considered "other sources."  20 C.F.R. § 404.1513(a), (e); 20 C.F.R. § 416.913(a), (e); and SSR 06-03p.  However, an ALJ is required to consider observations by non-acceptable medical sources as to how an impairment affects a claimant's ability to work.  *Sprague,* 812 F.2d at 1232.  An ALJ must give reasons germane to "other source" testimony before discounting it.  *Dodrill v. Shalala,* 12 F.3d 915 (9th Cir. 1993).  To qualify as germane, a reason for disregarding the testimony of a lay witness must be more than a wholesale dismissal of all such witnesses as a group, but rather must be specific to the lay witness.  *Smolen*, 80 F.3d at 1288.

Plaintiff challenges the ALJ's rejection of Ms. Champoux's November 9, 2010 opinion that Plaintiff can work a maximum of ten hours per week.  ECF No. 20 at 12-13.  On November 9, 2010, Ms. Champoux completed a DSHS form entitled Documentation Request for Medical or Disability Condition.  Tr. 275-276.  On the form, Ms. Champoux indicated Plaintiff had Bi-polar disorder, NOS, and ADHD "combine type."  Tr. 275.  Ms. Champoux checked a box indicating that those diagnoses were not supported by "testing, lab results, etc."  Tr. 275.  In the space for describing Plaintiff's limitations, Ms. Champoux wrote "some difficulty

likely for extended periods of time," and "plan initial 1-10 hours then increase as Holly adjusts to working." Tr. 275. Ms. Champoux indicated that Plaintiff's condition did not prevent her from preparing for and looking for work. Tr. 275. Ms. Champoux did not answer question number six, that asked "how long will this person's condition likely limit their ability to work, look for work, or train to work?" Tr. 276.

Ms. Champoux opined in July 2008, that Plaintiff was unable to work for three months. Tr. 27. The ALJ gave this opinion little weight, because these limitations were temporary, and Ms. Champoux provided no findings to support the limitations. Tr. 27. Also, the ALJ gave little weight to Ms. Champoux's November 2010 opinion that Plaintiff could work only one to ten hours per week, because this opinion was based upon Plaintiff's self-report of her symptoms, which was not fully credible. Tr. 27.

Plaintiff argues that Ms. Champoux reasonably relied upon Plaintiff's subjective complaints because she was credible, and because substantial evidence in the record supports Plaintiff's symptoms. ECF No. 20 at 13-14. A medical opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted. *Tonapetyan*, 242 F.3d at 1149 (rejecting physician opinion that lacked supporting objective evidence and was premised upon claimant's subjective complaints).

In this case, as analyzed above, the ALJ properly found that Plaintiff's report about the severity of her symptoms lacked credibility. Additionally, the report did not limit Plaintiff to ten hours of work per week permanently, but instead contemplated that Plaintiff would increase the number of hours as she adjusted to working. Tr. 275. Significantly, five months after the November 2010 opinion, Ms. Champoux indicated that Plaintiff "can work" and working "would be therapeutic" for her. Tr. 308. The ALJ's reasons for discounting Ms. Champoux's opinion provided in November 2010 were germane. The ALJ did not err.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 15

## C.    Step Five

Plaintiff contends the ALJ erred by relying upon the vocational expert's testimony that was premised on an incomplete hypothetical.  ECF No. 20 at 18-19.

The hypothetical that ultimately served as the basis for the ALJ's determination, i.e., the hypothetical that is predicated on the ALJ's final RFC assessment, must account for all of the limitations and restrictions of the particular claimant.  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009).  "If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy."  *Id.* (citation and quotation marks omitted).  In this case, the ALJ's hypothetical to the vocational expert failed to include the limitations related to the frequency of contact with supervisors opined by Dr. Kravitz.  As such, remand is required.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is based on legal error, and requires remand.  On remand, the ALJ is directed to reconsider Dr. Kravitz's opinion, and if necessary, provide valid reasons for rejecting his opinion related to Plaintiff's limitations on the frequency of interaction with a supervisor.  In the alternative, the ALJ should reconsider Plaintiff's RFC, and after incorporating Dr. Kravitz's limitations relating to supervision, obtain additional vocational expert testimony that addresses Plaintiff's revised RFC.  The decision is therefore **REVERSED** and the case is **REMANDED** for further proceedings consistent with this opinion.

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 20**, is **GRANTED.**  The matter is remanded to the Commissioner for additional proceedings pursuant to sentence four 42 U.S.C. 405(g).

///

ORDER GRANTING PLAINTIFF'S MOTION . . . - 16

1    2.    Defendant's Motion for Summary Judgment, **ECF No. 21**, is

2    **DENIED.**

3    3.    An application for attorney fees may be filed by separate motion.

4    The District Court Executive is directed to file this Order, provide copies to

5    counsel, entered judgment for **PLAINTIFF**, and **CLOSE** the file.

6    DATED August 22, 2014.

7

8        _____

9    JOHN T. RODGERS
     UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING PLAINTIFF'S MOTION . . . - 17